**Exhibit A**

# DECLARATION OF KENNETH W. DODDS

I, KENNETH W. DODDS, declare as follows:

1. I serve as the Director of the Office of Policy, Planning & Liaison at the United States Small Business Administration ("SBA"). I have held this position for approximately four years. Prior to that, I was the Director of both the Office of Policy, Planning & Liaison and the Office of Government Contracting for approximately two years. Before holding those positions, I served for 13 years in the SBA's Office of General Counsel, in the Office of Procurement Law.

2. In my capacity as the Director of the Office of Policy, Planning & Liaison, my responsibilities include, among others, developing and setting policy for SBA's administration of the 8(a) Business Development Program ("8(a) Program") and the HUBZone Program. In so doing, I direct policies of the 8(a) Program and HUBZone Program, to ensure that they meet congressionally-mandated purposes and goals.

## The 8(a) Program

3. The purpose of the 8(a) Program is to provide business assistance and development to small disadvantaged businesses. The 8(a) Program offers a broad scope of assistance to firms that are at least 51% owned and controlled by socially and economically disadvantaged individuals. Part of that assistance is providing federal government contracting opportunities to these disadvantaged firms.

4. By enacting the 8(a) Program, Congress has deemed that it is essential to the United States economy to provide this developmental assistance to disadvantaged firms. SBA and federal government procuring agencies work in concert to administer this program in order to meet Congress's goals.

5. Each fiscal year, the 8(a) Program's roughly 4,700 firms are awarded approximately $16 billion for almost every type of service or supply needed by federal agencies, which provides not only those dollars to disadvantaged firms but also experience through performance of those contracts. In this way, the 8(a) Program aids in building the economic strength of disadvantaged business owners, creates jobs, and strengthens the economy's base of innovative and agile firms.

6. The nature of the 8(a) Program is to provide assistance for a nine-year period of development. Over that time, the disadvantaged firm first gains access to federal government contracting opportunities. Eventually, within the nine-year term, the firm transitions to a graduation point, where it leaves the 8(a) Program able to compete and thrive in the economic mainstream.

7. When firms graduate from the 8(a) Program, they are no longer eligible for those federal government contracting opportunities, as those resources are required to be available for the remaining and newly admitted 8(a) Program participants, which are in need of such assistance. Through this process, the 8(a) Program provides benefits to an ongoing new crop of developing businesses.

8. When an 8(a) Program contract is obtained fraudulently by an ineligible firm, deserving and eligible firms are deprived of the develop opportunities that the 8(a) Program exists to provide, such as the experience of performing the contract and the chance to earn those contract dollars.

9. In this way, those fraudulent ineligible firms undermine the integrity of the 8(a) Program, because eligible firms are prevented from receiving these development opportunities, as Congress intended.

10. Moreover, when 8(a) Program contracts are obtained fraudulently by ineligible firms, the reputation and public perception of the 8(a) Program are harmed, as the public questions the value of the 8(a) Program to the public and the economy if the Program's benefits are not being directed to deserving and eligible firms.

### The HUBZone Program

11. The Purpose of the HUBZone Program is to provide federal contracting assistance for qualified small business companies located in Historically Underutilized Business Zones ("HUBZones") in an effort to increase employment opportunities, investment, and economic development in such areas. HUBZones are determined using multiple federal sources, though such areas are typically characterized by low median household income, high unemployment, or both.

12. By enacting the HUBZone Program, Congress has deemed that it is essential to the United States economy to provide this developmental assistance to distressed areas. SBA and federal government procuring agencies work in concert to administer this program in order to meet Congress's goals.

13. In Fiscal Year 2015, for example, HUBZone Program participants received more than 71,000 contract actions worth in excess of $6.4 billion for almost every type of service or supply needed by federal agencies. Those actions not only provided funds to HUBZone firms but also stimulated economic development in HUBZones. In this way, the Program aids in building the economic strength of distressed areas, creates jobs, and strengthens the economy.

14. The nature of the HUBZone Program is to provide contracting preferences to companies that, among other things, have a principal office located – and at least 35% of its employees living – in a HUBZone.

3

15. When a HUBZone Program contract is obtained fraudulently by ineligible firms, the reputation and public perception of the HUBZone Program are harmed, as the public questions the value of the program to the public and the economy if the program's benefits are not being directed to deserving and eligible firms.

### Subcontracting Limitations

16. Both the 8(a) Program and HUBZone Program limit the amount of set-aside contract performance that program participant companies may subcontract to other firms.

17. The limitation on subcontracting helps ensure contracts awarded under the 8(a) Program and the HUBZone Program benefit those businesses and target areas.

18. Further, the limitation on subcontracting constitutes a significant program integrity tool. Absent a limitation on subcontracting, the benefits of the 8(a) Program and HUBZone Program may not reach the intended targets to the same degree. In this way, a violation of the subcontracting limitation harms program participants in a manner analogous to companies fraudulently obtaining program contracts.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 11/9/2016

Kenneth W. Dodds
Director
Office of Policy, Planning & Liaison
U.S. Small Business Administration
Washington, D.C. 20416